**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RICHARD MANUEL BURGOS,

Plaintiff,

vs.

MATTHEW L. CATE, et al.,

Defendants.

_______________________________/

No. CIV S-09-3276-CMK-P

ORDER

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1) and two motions for temporary restraining orders (Docs. 2, 7). Plaintiff has consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and no other party has been served or appeared in the action.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover,

the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's claims are not clear. He names 47 individuals as defendants to this action, including various correctional officers, librarians, nurses, doctors, and wardens. He sets forth several inmate grievance appeals he has filed regarding access to the law library, disciplinary actions, job assignments, medical care, and personal property. Several of the individuals named as defendants to this action were involved at some level with these inmate grievances. His claims appear to raise issues relating to access to the law library, violation of medical orders, false disciplinary actions, destruction of medical and personal property, and retaliation.

## II. DISCUSSION

Plaintiff's complaint suffers from several defects. First and foremost, Plaintiff fails to set forth a short and plain statement of his claim as required by Rule 8 of the Federal Rules of Civil Procedure. To satisfy the requirements of Rule 8(a) claims must be stated simply, concisely, and directly. Here, Plaintiff's complaint consists of 78 pages of "facts" discussing several incidents wherein he believes he was mistreated, including being denied access to the law library, being assigned to a job inconsistent with his disabilities, begin subjected to various cell

moves, having his medical orders ignored, and having his medical and other property confiscated and/or destroyed. As discussed further below, none of these incidents set forth a specific claim but rather allude to possible claims such as denial of access to the court, due process, denial of medical care, and retaliation. However, Plaintiff does not plead with sufficient clarity any of these possible claims.

In addition, if the court's reading the complaint is accurate, Plaintiff is attempting to bring this action against several unrelated individuals on separate and unrelated claims. The Federal Rules of Civil Procedure allow a party to assert "as many claims as it has against an opposing party," but does not provide for unrelated claims against several different defendants to be raised on the same action. Fed. R. Civ. Proc. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). As far as the court can determine, Plaintiff's claims against various defendants are unrelated. Thus, those unrelated claims (such as library access and medical care) against several different defendants, should be separated into different actions.

Plaintiff also fails to provide any connection or link for several of the defendants. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth

specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Furthermore, Plaintiff names several supervisory personnel as defendants, apparently based on their position alone and not on any personal conduct. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S. Ct. at 1948.

As to the specific claims the court can decipher from the complaint, the standards for each one will be outlined for Plaintiff's benefit. As discussed below, if Plaintiff chooses to file an amended complaint, he will be required to set forth with more particularity what his claims are.

1. INMATE GRIEVANCES:

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Plaintiff references several inmate grievances he has filed and is dissatisfied with the results. To the extent he is attempting to raise a claim related to the grievance process itself, he is unable to state a cognizable claim. To the same extent, several of the defendants named in the complaint are mentioned only in relation to their decision in denying Plaintiff's grievances. Such stand alone claims are insufficient. If the only alleged wrongdoing of an individual relates to a decision made in denying a grievance, Plaintiff's claim against that individual cannot survive.

2. PERSONAL PROPERTY:

Where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113,

129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See Zinermon, 494 U.S. at 128-29.

Plaintiff makes reference to some of his property ending up missing or damaged following cell searches. To the extent he is attempting to state a claim related to the unauthorized taking of his property, such a claim in not cognizable.

3. EIGHTH AMENDMENT (FORCE/SAFETY/MEDICAL):

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as

opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Similarly, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if

harm ultimately was not averted. See Farmer, 511 U.S. at 844.

In addition, deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh,

90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff's contentions raise several possible Eighth Amendment claims. First, Plaintiff may be trying to state an excessive force claim. Some of the facts alleged raise the issue of force being used, but his conclusory statements that a defendant "caused physical pain to preexisting injuries" is insufficient to state such a claim. It is possible, however, that Plaintiff may be able to correct this deficiency if provided an opportunity. If Plaintiff intends to state a claim for the use of excessive force, he should bear in mind the standards outlined above.

In addition, Plaintiff may be trying to state a failure to protect claim. Plaintiff alleges he was subject to numerous cell moves wherein he was placed with inmates who were unsuitable. If this is Plaintiff's intention, he is again directed to the standards outlined above, and should be provided an opportunity to clarify his claim. Plaintiff also should keep in mind the necessity of identifying the proper defendant, that is who he claims was directly responsible for placing his safety at risk.

Finally, Plaintiff may be trying to state a claim for inadequate health care. Plaintiff's complaint contains several references to the necessity of a foam mattress. While it appears from the allegations in the complaint that the medical personnel actually agreed this was medically necessary, he may have some claim against non-medical personnel denying him medically necessary equipment. He also references other medical orders having been violated. His allegations, however, are vague at best. If Plaintiff intends to raise an Eighth Amendment claim for denial of medical needs, his allegations need to be more specific as to who is responsible for denying his medical needs, and how his medical needs were denied, keeping in mind the standards outlined above.

4. ACCESS TO THE COURT:

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

procedures). This right includes petitioning the government through the prison grievance process. See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

Plaintiff again makes numerous references to being denied access to the law library. He does not, however, indicate anywhere in his complaint that such denial had any actual impact on his ability to adequately access the court. While limiting access to the prison law library may be inconvenient, limited library access alone is insufficient to state a claim for denial of access to the courts. Plaintiff makes no allegation that there was any connection between his limited (or perhaps non-existent) access to the library and an inability to challenge his sentence or the conditions of his confinement. This defect is curable, and Plaintiff will have such an opportunity.

/ / /

5. DUE PROCESS

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th

Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Plaintiff references false disciplinary proceedings. It is unclear what claim he is attempting to raise regarding these alleged false statements, and whether his claim is cognizable in a § 1983 case or should be raised in a habeas petition. However, to the extent he is attempting to claim he was somehow denied due process in a disciplinary proceeding wherein he did not lose good-time credits, he shall reference the above standards if he attempts to raise such a claim in an amended complaint.

/ / /

/ / /

6. RETALIATION:

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Finally, Plaintiff appears to be alleging retaliation in the form of cell moves, prison transfers, and housing with inappropriate cell mates. However, the basis for the alleged retaliatory acts is unclear . As stated above, Plaintiff must allege that an adverse action was taken against him in response to engaging in a protected activity. The most apparent defect in this claim is Plaintiff's failure to set forth that he was engaged in any protected activity. He also fails to allege that due to some protected activity, he was made to suffer an adverse action. To the extent he is complaining about being retaliated against, his claim is insufficient. If Plaintiff chooses to file an amended complaint, he shall reference the standards set forth above to ensure he alleges sufficient facts to make this claim clear.

/ / /

**III. TEMPORARY RESTRAINING ORDER**

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established. To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365 (2008)). To the extent prior Ninth Circuit cases suggest a lesser standard by focusing on the mere possibility of irreparable harm, such cases are "no longer controlling, or even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Under Winter, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest. See Stormans, 586 F.3d at 1127 (citing Winter, 129 S. Ct. at 374).

Here, Plaintiff's request for a temporary restraining order fails at the outset as he fails to show that any irreparable injury is likely. While he makes some claims as to his medically necessary pillows having been discarded, and the refusal of prison officials to order a medically necessary foam mattress, he fails to explain to the court what his medical condition is which requires such items and how the delay in obtaining them will result in irreparable injury. Similarly, he fails to allege any actual injury related to the lack of access to the law library or as to his current housing situation. His conclusory statements that he has suffered physical harm is insufficient. Accordingly, his requests for a temporary restraining order will be denied.

**IV. CONCLUSION**

Plaintiff's complaint, as currently written, fails to state a claim. The undersigned has attempted to extract the possible claims Plaintiff is trying to make based on a fair reading of the complaint. However, it is up to Plaintiff to formulate and articulate his claim, not for the court or the defendants to try to decipher what claims Plaintiff has. Plaintiff need not agree with the claims set forth above, and may include in his complaint those he wishes to pursue.

However, he is cautioned, as discussed above, that the court will not allow this case to proceed on multiple unrelated claims against multiple unrelated defendants.

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id. In addition, Plaintiff is cautioned that the pleading stage is not the time for submission of numerous exhibits and other alleged evidence. His claims and factual allegations should be clearly alleged in his amended complaint, but he need not support his claims with documentary evidence at the pleading stage. Therefore, Plaintiff shall refrain from filing numerous exhibits and other documentary evidence with his complaint. Such evidence will be permitted during the dispositive motion phase and/or at trial.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). The complaint also must contain only claims which are related, either arising out of the same transaction or occurrence or against the same defendants. See George v. Smith, 507 F.3d 605, 607 (7th Cir.

2007); Fed. R. Civ. Proc. 18(a).

Because some of the defects identified in this order cannot be cured by amendment, Plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend;

2. Plaintiff shall file an amended complaint within 30 days of the date of service of this order; and

3. Plaintiff's motions for a temporary restraining order (Docs. 2, 7) are denied.

DATED: September 27, 2010

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE